IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MATTHEW S.,                         )
                                    )
           Plaintiff,               )
                                    )
     v.                             )    1:23CV991
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social       )
Security,                           )
                                    )
           Defendant.[1]            )
```

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Matthew S., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 3 (cited herein as "Tr. __")), Plaintiff has moved for summary judgment (Docket Entry 9; see also Docket Entry 10 (Brief in Support)), and the Commissioner has submitted a dispositive brief in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11). For the reasons that follow, the Court will deny Plaintiff's Motion

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should substitute for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

for Summary Judgment (Docket Entry 9) and enter judgment for the Commissioner.[2]

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 260-69), alleging a disability onset date of May 5, 2018 (see Tr. 260, 263). Upon denial of that application initially (Tr. 121-32, 144-48) and on reconsideration (Tr. 133-43, 158-67), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 168-91). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 45-77.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 17-43.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 257-59), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2024.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since May 5, 2018, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: migraines, traumatic brain injury with residual effects, attention deficit disorder and hyperactivity disorder

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 8 at 1.)

(ADD/ADHD), bipolar disorder with depression and anxiety disorder, post-traumatic stress disorder (PTSD), [p]ersonality disorder and mild neurocognitive impairment.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine tasks and simple work-related decisions, not at production pace; can interact occasionally with supervisors and coworkers, but never with the public; can adapt to occasional changes in the workplace setting with no complex decision making; and can tolerate no exposure to common workplace hazards.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from May 5, 2018, through the date of this decision.

(Tr. 22-38 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

In Plaintiff's first and only issue on review, he argues that "the ALJ's RFC [d]etermination that [Plaintiff] was limited to work 'not at production pace' is so vague as to preclude judicial review." (Docket Entry 10 at 2 (quoting Tr. 27) (bold font and block formatting omitted).) More specifically, Plaintiff maintains that "the ALJ here, like the ALJ in *Thomas*[ *v. Berryhill*, 916 F.3d 307 (4th Cir. 2019),] heled [sic] that [Plaintiff] could not perform work 'requiring a production rate or demand pace,' but did not give the Court enough information to understand what those terms mean." (Id. at 6 (quoting Thomas, 916 F.3d at 312).) According to Plaintiff, "[i]n *Perry v. Berryhill*, [765 F. App'x 869 (4th Cir. 2019),] the Fourth Circuit elaborated that[,] while terms like 'unskilled work' are terms of art defined in [the SSA]'s

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

regulations, there was no analogous regulatory definition for a 'non-production oriented work setting' and the term was not self-explanatory or otherwise explained by the ALJ" (id. at 7 (quoting Perry, 765 F. App'x at 872-73)), and "this Court has found that *Thomas* and *Perry* 'stands [sic] for the proposition that, in order to be susceptible to judicial review, an ALJ's decision must contain some meaningful context or descriptor of what the ALJ meant by the term "production rate," when that term (or something similar) is used in a mental RFC determination'" (id. (quoting Barr v. Kijakazi, No. 1:22CV455, Docket Entry 17 at 7 (M.D.N.C. Jun 2, 2023) (unpublished) (Webster, M.J.))). In Plaintiff's view, "just as in *Barr*, the ALJ [here] failed to provide any sort of meaningful context or descriptor for what 'not at a production pace' meant in his RFC," and, "[b]ecause we are left to wonder what the ALJ meant by 'production pace,' the ALJ's hypothetical to the [VE] and the [VE]'s responses were not based on substantial evidence." (Id. (quoting Tr. 27).) For the reasons that follow, those arguments miss the mark.

As an initial matter, the VE here did not express any difficulty in understanding the meaning of the ALJ's preclusion of "production pace" work (Tr. 69) in responding to the ALJ's dispositive hypothetical question. (Tr. 70-71.)[7] The VE

---

[7] Significantly, the Dictionary of Occupational Titles ("DOT") defines "light work" as including "working at a production rate pace":

[A] job should be rated [l]ight [w]ork . . . when the job requires

9

thereafter provided six jobs that fit within the ALJ's non-production restriction, i.e., three different hand packager jobs at the medium, light, and sedentary exertional levels, two different production worker jobs at the medium and sedentary exertional levels, and the light-exertion job of housekeeper (see Tr. 71), and expressly noted that the production worker job "d[id] not require quota work or production standards" (id.). Notably, Plaintiff made no attempt in his brief to argue that the corresponding descriptions in the Dictionary of Occupational Titles ("DOT") for those jobs depicted production-pace work (see Docket Entry 10), and courts have rejected arguments that any job in a production setting necessarily entails production pace work, see Martinez v. Berryhill, No. 3:17CV186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("[The p]laintiff argues that the[ jobs of dowel inspector and getterer] are involved with the production process of dowels and incandescent lamps, respectively, and therefore must conflict with the limitation of not working at a production rate pace. The [c]ourt cannot agree, as such a conflict implies that being involved with the production of any good in any way implies a production rate or pace. Nothing in the

---

> working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, App'x C ("Components of the Definition Trailer"), § IV ("Physical Demands - Strength Rating"), 1991 WL 688702 (emphasis added).

10

Case 1:23-cv-00991-LPA    Document 14    Filed 12/30/24    Page 10 of 15

[DOT]'s description for dowel inspector or getterer has anything to do with rate or pace, which is what the limitation in question was designed to restrict."), aff'd sub nom. Martinez v. Saul, 776 F. App'x 175 (4th Cir. 2019).

Significantly, despite Plaintiff's assertion in this Court that the ALJ's non-production pace limitation qualified as "vague" (Docket Entry 10 at 2 (bold font omitted)), at the hearing before the ALJ, Plaintiff failed to question the VE regarding the meaning of that restriction, or how the jobs the VE cited adhered to that restriction, notwithstanding the fact that Plaintiff took the opportunity (through his attorney) to cross-examine the VE. (See Tr. 72-75.) As a result, Plaintiff has forfeited, in this Court, any challenge on vagueness grounds to the ALJ's non-production pace restriction. See Coyier v. Saul, Civ. No. 20-1899, 2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (unpublished) (holding that the plaintiff "waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates"); Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (holding the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Bunton v. Colvin, No.

11

1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue on judicial review where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at *9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive[ ] . . . [and] finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); Young v. United States Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (unpublished) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts . . ., and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

Even if Plaintiff had not forfeited his right to raise this issue on review, it still fails on its merits. In Thomas, the

12

Fourth Circuit held that the ALJ's preclusion of "work requiring a production rate or demand pace[ ] did not give [the court] enough information to understand what those terms mean." Thomas, 916 F.3d at 312 (emphasis added) (internal quotation marks omitted). Shortly thereafter, the Fourth Circuit found fault with "the ALJ's reference to a 'non-production oriented work setting,'" as the Fourth Circuit "d[id] not know what the ALJ intended when she used that phrase," making it "difficult, if not impossible, to evaluate whether restricting [the plaintiff] to a 'non-production oriented work setting' properly accounted for [his] well-documented limitations in concentration, persistence, and pace." Perry, 765 F. App'x at 872 (emphasis added).[8]

Significantly, the Fourth Circuit has affirmed cases with RFCs limiting claimants to work at a non-production pace, see, e.g., King v. Berryhill, No. 3:18CV1, 2019 WL 1317732, at *2 (W.D.N.C. Mar. 22, 2019) (unpublished) ("non-production pace"), aff'd sub nom. King v. Saul, 787 F. App'x 170 (4th Cir. 2019); Michaels v. Colvin, No. 3:15CV388, 2016 WL 8710975, at *1, 7 (W.D.N.C. Mar. 25, 2016) (unpublished) ("nonproduction pace rates"), aff'd sub nom. Michaels v. Berryhill, 697 F. App'x 223 (4th Cir. 2017). Moreover,

---

[8] Perry's holding that the ALJ failed to adequately explain the meaning of a "non-production oriented work setting," Perry, 765 F. App'x at 872 (emphasis added), explains why Barr (relied on by Plaintiff (see Docket Entry 10 at 7)) does not aid Plaintiff's cause. In Barr, another judge of this Court remanded for further explanation of the phrase "non-production work setting," and deemed that restriction "remarkably similar to the one found impermissibly vague in Perry," Barr, No. 1:22CV455, Docket Entry 17 at 11 (emphasis added). Here, the ALJ barred production pace work, not work in a production work setting. (See Tr. 27.)

13

Thomas and Perry "did not create a categorical rule that failing to define certain terms constitutes a reversible error," Taylor v. Saul, No. 3:19CV468, 2020 WL 4340536, at *6 (E.D. Va. July 27, 2020) (unpublished), but, rather, "clarified that a reviewing court's ability to understand phrases such as 'production rate o[r] pace' in an ALJ's opinion depends on the phrase's context and use," Katherine M. A. v. Saul, No. 3:19CV649, 2021 WL 1207739, at *10 (E.D. Va. Feb. 2, 2021) (unpublished), recommendation adopted, 2021 WL 1206799 (E.D. Va. Mar. 30, 2021) (unpublished).

As another judge of this Court has reasoned:

> In [Perry], the Fourth Circuit specifically distinguished its decision in Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to 'non-production jobs,'" as "the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in [CPP]," which "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations." Perry, [765 F. App'x at 872] n.1. As in Sizemore, and unlike in Perry, the ALJ here provided the necessary 'descriptors,' limiting [the p]laintiff to 'a low stress, low production environment with no rigid quota and occasional exposure to people.' Accordingly, Perry does not justify remand in this action.

Ross v. Berryhill, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added) (internal parenthetical citation omitted).

14

As in Ross (and consistent with Sizemore, as construed in Perry), the ALJ here included the descriptors of "simple, routine tasks," "simple work-related decisions," only "occasional changes in the workplace setting," "no complex decision making," only occasional interaction "with supervisors and coworkers," and no interaction "with the public." (Tr. 26-27.) Those descriptors "help[] to explain the restriction intended by the ALJ." Perry, 765 F. App'x at 872 n.1.

In sum, as the Court can meaningfully review the ALJ's restriction to non-production pace work, Plaintiff's first and only assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's Motion for Summary Judgment (Docket Entry 9) is **DENIED,** and that this action is **DISMISSED** with prejudice.

                                           /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                   **United States Magistrate Judge**

December 30, 2024